# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| RANDALL CRAIG | § | |
| | § | |
| V. | § | No. 9:99cv32 |
| | § | |
| BIG 4, INC., et al. | § | |

## MEMORANDUM ORDER AND OPINION

Came on this day consideration of Plaintiff's Motion for Entry of Judgment, Motion for Front Pay, Motion for Pre-Judgment Interest and Application for Attorney's Fees and Costs. After due consideration, the Court rules as follows.

Plaintiff sued under Title VII and the Texas Commission on Human Rights Act, alleging that he was subjected to religious hostile work environment, was terminated because of his religion, and was subjected to emotional distress. The jury found for the Plaintiff, and awarded $21,500 for back pay, $12,000 for mental anguish, and $25,000 for punitive damages. At trial, the parties stipulated to submit the issue of front pay to the Court, along with attorney's fees and costs.

### Front Pay

Plaintiff contends that front pay is proper to compensate him for lost future wages, because reinstatement is not feasible in light of the hostile work environment which gave rise to the lawsuit. Plaintiff argues that his future income stream, or front



pay loss, is $6,792.00 per year, and should be discounted by three percent. Plaintiff seeks a minimum award of three to five years front pay.

Defendants contend that front pay is inappropriate here for three reasons. First, Plaintiff's loss of income ended prior to trial, as evident by the jury awarding back-pay damages for $21,500 instead of the full amount sought by Plaintiff. Accordingly, Defendants argue that there are no future lost earnings and hence no front pay. Second, Defendants contend that Plaintiff's front-pay calculation is speculative because it conjectures an inaccurate amount of overtime that Plaintiff would have earned. Consequently, Defendants argue that Plaintiff is in a better financial position with his new occupation. Third, Defendants point out that a downturn in business forced them to layoff several truck drivers based upon seniority. Because of Plaintiff's lack of seniority (eight weeks' employment), it is unlikely that Plaintiff would have remained employed with Defendants much longer.

Front pay is allowed under both Title VII and the Texas Commission on Human Rights Act. *Borg-Warner Protective Servs. Corp. v. Flores*, 955 S.W.2d 861, 867 (Tex. App. 1997). Front pay is proper only if the Court determines that reinstatement is improper. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992). The purpose of awarding front pay is to compensate Plaintiff for lost future wages and benefits, an admittedly speculative task. *Shirley v. Chrysler First, Inc.*,

2

970 F.2d 39, 44-5 (5th Cir. 1992).

Here, the evidence in the record and the jury's verdict amply demonstrate that reinstatement is improper. In light of the jury's finding of a hostile work environment and the apparent deterioration of the parties' relationship, it would hardly be appropriate to force Plaintiff to return from whence he came.

However, under the circumstances, this Court deems that any award of front-pay in addition to the jury's verdict is inappropriate. The Court agrees with Defendants that Plaintiff is presently in a better financial position; consequently, he has no lost future income. The procedure for calculating front pay is two-fold. *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 622 (5th Cir. 1996). First, the court must calculate the future income stream (or the lump sum award for future damages) by estimating the wages Plaintiff would have received during his employment. 82 F.3d at 622. Because the evidence does not show that Plaintiff was likely to receive a continued income stream of $3,000 per month, any award of front-pay based upon such a figure is highly speculative. The brevity of Plaintiff's employment as well as Plaintiff's testimony that he intended to work for Defendants temporarily[1] must also, under the equities, limit this Court's discretion in awarding front pay.

---

[1] At one point, Plaintiff testified that he had hoped to find employment compatible with his training as a preacher and that truck-driving was not his intended occupation.

3

Plaintiff contends that he would have earned approximately $3,000 per month while employed by Defendants. It is clear that this Plaintiff's salary as a truck driver for Defendants was $9.00 per hour, for a total of $360.00 per week, based upon a forty-hour work week. However, Plaintiff's future lost wages figure of $3,000 per month includes a large number of overtime hours. Trial Exhibits 12 and 13 show that most employees earned less than $9,000 per quarter (through overtime or otherwise) from Defendants. When considered over three months, most employees earned less than $3,000 per month. Plaintiff has also not presented evidence to contradict the fact that Defendants' overall number of payroll employees began to steadily decrease from quarter to quarter subsequent to Plaintiff's termination. *See* Plaintiff's Ex. 12 and 13. In light of Plaintiff's testimony that he only intended to work at Defendants temporarily and his lack of seniority to prevent his layoff, Plaintiff has failed to present evidence that is less than speculative to support his claim of a future stream of income of $3,000 per month.

Consequently, the Court finds that an award of front-pay is inappropriate, as the Plaintiff, who testified that he presently earns at least $2,500 per month, is in a better financial position than when he was employed by Defendants. Plaintiff cannot show with any certainty that he has lost a future stream of income.

4

*Prejudgment Interest*

Plaintiff seeks prejudgment interest, as part of Title VII's goal in "making the victim of discrimination whole." Plaintiff argues that this interest is 5.02%, based upon the average Treasury Bill rate from the date of his termination through the last date listed under 28 U.S.C. § 1961. Defendants do not contest this figure or this argument.

As stated before, the goal of Title VII is to restore an employee who has been discriminated against to his rightful place by making him financially whole again. *Gloria v. Valley Grain Prods., Inc.*, 72 F.3d 497, 499 (5th Cir. 1996). Prejudgment interest may assist in that goal: "[t]he time value of money causes an award of backpay to be worth less if prejudgment interest is not included." *Id.* However, it has also been stated that it would be equally improper to require every defendant to pay every plaintiff for the use of funds denied as a result of every employment decision. *Odom v. Frank*, 782 F.Supp. 50, 52 (N.D. Tex. 1991). Thus, this decision lies within the discretion of the district court and is not always required. 72 F.3d at 499. The Fifth Circuit in *Valley Grain Products* did not elaborate why the district court did not abuse its discretion in denying such interest.

In *Sellers v. Delgado Community College*, 839 F.2d 1132, 1140 (5th Cir. 1988), the court held that it was an abuse of discretion to deny pre-judgment interest on back

pay on the basis that the constructive discharge was not intentional.  The court held that such a holding suggested that a constructive discharge was less culpable than a formal discharge. *Id.* Because of Title VII's "make-whole purpose," the court in *Pegues v. Mississippi State Employment Service et al.*, 899 F.2d 1449, 1453 (5th Cir. 1990), found that a failure to award pre-judgment interest on back pay would be insufficient to place plaintiffs in their rightful place in light of the twenty year lapse since the wrongful conduct.

Here, the jury awarded back pay.  The evidence does not indicate that an award of interest is unjustified. Although Plaintiff incurred financial hardships over a period of six or seven months, there is no indication that Defendants were even remotely aware of potential liability until the jury verdict; from their point of view, Defendants were simply defending what might have been a frivolous claim. *See Odom v. Frank*, 782 F.Supp. at 52.  This case is unlike *Pegues*, *supra*, where the defendant had use of the plaintiff's money for an extended period of time, thereby exacerbating Plaintiff's injury.  The jury did not award Plaintiff the full amount of damages he sought; consequently, it is reasonable to presume that the jury's verdict reflects a finding that the damages from the lack of pay ceased during Plaintiff's successive employment and prior to trial.

Furthermore, Plaintiff was employed for a brief time frame: eight weeks.  In

6

conjunction with his admission that this was not his intended occupation, the relatively short time period between the termination and Plaintiff's present employment, the Court finds that an award of prejudgment interest on back pay would not promote the goals of Title VII. Plaintiff has been made whole, both for his economic damages as well as his mental anguish. Denial of prejudgment interest does not prevent Plaintiff from being fully compensated.

Consequently, the Court DENIES an award of prejudgment interest.

### Attorney's Fees and Costs

Plaintiff's counsel has submitted an application for fees in the amount of $26,995 plus a conditional award of appellate fees. Plaintiff contends that the lodestar fee is $175.00 per hour for hours worked prior to February 1, 1999 (when he received his board certification in labor and employment law), and $200.00 per hour for hours worked after that date. Plaintiff does not seek an enhancement of the lodestar amount. Plaintiff's bill of costs totals $1,430.65 for clerk, court reporter and witness fees, plus service and copy fees.

Defendants respond that Plaintiff has miscalculated the total hours worked, and simply notes that the total hours listed is 128.90 rather than the 136.20 submitted. Defendants makes no other response regarding fees or costs.

The party seeking attorney's fees has the burden of proof to specify the

7

authority for fees and provide a "fair estimate of the amount sought." Fed. R. Civ. P. Rule 54(d)(2)(A)-(B). In civil rights cases, the general rule is that prevailing plaintiffs "should ordinarily recover" fees unless the award is unjust due to "special circumstances." *Kirchberg v. Feenstra*, 708 F.2d 991, 995 (5th Cir. 1983)(citations omitted). The policy behind awarding fees in civil rights cases (as an exception to the American Rule where each party bears its own costs) is to ensure that private citizens have an opportunity to vindicate their rights. 708 F.2d at 995 (citation omitted).

In calculating attorney's fees, the court must first calculate the "loadstar" amount by multiplying the reasonable number of hours expended upon the litigation by the reasonable hourly rates for the participating lawyers. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The second step of the process is any adjustment upward or downward based upon the circumstances. *Id.* Factors to be considered are known as the *Johnson* factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The party seeking reimbursement of attorney's fees has the duty to produce "contemporaneous billing records or other sufficient documentation[.]" 50 F.3d at 324. The district court must then determine where the total hours claimed are reasonable and whether particular hours expended were reasonable. *Id.* at 325. The Fifth Circuit suggested that vague billing records regarding hours worked may result

in a reduction of "reasonable hours worked." *Id.* at 326-27. The determination of reasonable rates requires consideration of the attorney's regular rates and prevailing rates. *Id.* at 328.

The billing records submitted by Plaintiff's counsel indicate that a total of 128.9 hours were spent upon the litigation and preparation of this case. The Court recognizes that this is indeed a reasonable, efficient number of hours spent upon litigation of this case. There were no excessive paper filings in this case, and both counsel conducted themselves in an efficient manner during the course of trial. Employment and labor cases can be highly time consuming, especially considering the fact that most of these cases turn on circumstantial evidence of the motives for termination and harassment.[2]  The evidence in this case was largely circumstantial, and could have been weighed by the jury either for or against the Plaintiff in light of the instruction that Title VII is not intended to be a general code of civility. Given the testimony and evidence, this Court finds that 128.9 hours was reasonably spent upon the litigation of this case.

Plaintiff's counsel asserts to this Court that the reasonable rate for his hours

---

[2]  The Court notes for purposes of observation only, that Motions for Fees in previous employment cases have sought hours three and four times that of the present Motion.  As in the present motion, many of the previous motions indicate that the hours claimed is less than or "discounted" from the true number of hours worked.

9

worked prior to the date of his Board Certification, February 1, 1999, is $175.00 per hour, and that the reasonable rate subsequent to that is $200.00 per hour. The Court notes that Plaintiff's counsel's practice is in the Houston-metropolitan area. Counsel asserts that the reasonable rate in that area is between $200 and $350 per hour.

Counsel for Plaintiff has tried numerous employment law cases in both federal and state court, and has handled several appeals, most of which have been in federal court. Counsel has been licensed for almost ten years, and has been involved in employment law for eight of those years. Counsel's experience previous to this case has been limited neither to the Houston area nor to the State of Texas. In light of the evidence and the professional conduct of both attorneys during the clear and concise trial, the Court finds that fees of $175.00 and $200.00 per hour are reasonable.

Consequently, the Court finds that the lodestar amount in this case is $25,535.[3]

As stated above, the "loadstar" approach is the initial step. The *Johnson* factors come into consideration whether the "loadstar" amount should be adjusted up or down. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)(holding product of reasonable hours times reasonable rate does not end inquiry, but other factors may adjust the fee upward or downward) (citing *Johnson v. Georgia Highway Express,*

---

[3] This figure is calculated with the following formula: (9.8 hours hours reasonably spent prior to Feb. 1, 1999 @ $175.00 per hour) + (119.1 hours reasonably spent after Feb. 1, 1999 @ $200.00 per hour).

*Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). Plaintiff's counsel does not argue that the loadstar figure should be adjusted upward, and argues against any downward adjustment.

The court in *Johnson v. Georgia Highway Express, Inc.*, *supra*, listed various factors to determine whether the lodestar figure should be adjusted up or down. Those factors are: 1) time and labor required; 2) novelty and difficulty of the questions; 3) skill necessary to perform the legal service properly; 4) preclusion of other employment by attorney due to the present case; 5) customary fee; 6) whether fee is fixed or contingent; 7) time limits imposed by the client or circumstances; 8) amount involved and results obtained; 9) experience, reputation, and ability of attorneys; 10) "undesirability" or hardships due to the subject matter of the case; 11) nature and length of professional relationship with client; 12) awards in similar cases. 488 F.2d at 717-19. Many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." 461 U.S. at 434 n. 9.

Considering the factors here, there is no basis for an upward or downward adjustment. Most of the *Johnson* factors were considered in determining the loadstar amount, such as counsel's ability and experience, customary fees, and time constraints involved. Plaintiff's counsel has represented him through the various stages required in a Title VII suit for approximately two years; yet, the time and labor

11

required of such representation does not call for any adjustment. The particular question of religious harassment is a novel question; however, the underlying premise of Title VII harassment and termination is the same, whether based upon race, gender or religion. In every Title VII case, regardless of its novelty, skilled counsel is necessary to win a jury verdict due to the nature of the evidence typical of these claims. Plaintiff's counsel is a solo practitioner; thus, time spent upon this case necessarily precluded time spent on other cases or office matters. However, this may be said of most any attorney who spends a significant amount of time on one case. The results obtained in this case were certainly favorable for the Plaintiff; yet, there is nothing "exceptional" about this result that justifies an adjustment on that basis. The possibility that the verdict may have surprised parties involved does not turn the result into something "exceptional" for purposes of adjusting attorney's fees. The "undesirability" of a case does not pertain to the parties individually, but is a consideration of the hardship faced by attorneys in representing civil rights litigants. Although this case may have presented difficult issues, there is nothing "undesirable" under the circumstances to justify any adjustment to the lodestar amount.  Finally, jury awards in civil rights cases may vary drastically; such is the nature of cases where the primary form of the injury is often a decrease or loss of pay. That fact does not lessen the result of the jury verdict to justify an adjustment to the lodestar figure.

12

Consequently, after consideration of the *Johnson* factors, this Court finds that no adjustment to the loadstar amount of $25,535 in attorney's fees is justified.

**Taxation of Costs**

Plaintiff submits a bill of itemized costs as follows:

| | | |
|---|---|---|
| Clerk Fees: | $ | 150.00 |
| Service of Summons and Subpoena: | $ | 249.00 |
| Court reporter fees: | $ | 617.25 |
| Witness Fees: | $ | 80.00 |
| Copies (1672 @ $.20) | $ | 334.40 |
| TOTAL: | $ | 1430.65 |

Defendant makes no objection to this itemization of costs.

Rule 54(d) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Costs are set by 28 U.S.C. § 1920; the statute allows the following costs to be taxed: clerk or marshal fees, court reporter fees, fees for printing, witness fees, copies, docket fees, experts and interpreters. This statute specifies what expenses may be taxed as costs under Rule 54(d), which generally grants a federal court discretionary authority to refuse to tax costs to the prevailing party. *Crawford v. Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1986).

Clearly, the filing fee is taxable. Service of the suit is taxable. Copies are taxable. Witness fees are taxable. Costs of deposition transcripts that are reasonably

13

necessary in a case are also taxable. *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 996 (7ᵗʰ Cir. 1976). It cannot be said that the three depositions taken by Plaintiff were not reasonably necessary for use in this trial.

The only error the Court finds is that the evidence submitted for costs of service and summons totals $229.00 rather than the $249.00 the Plaintiff seeks. Although Plaintiff miscalculated the sum total of costs sought, the Court finds that the underlying bases for an award of costs is with merit. Thus, Plaintiff is entitled to an award of costs in the amount of $1,410.65.

### *Appellate Attorney Fees*

The Court reserves its decision on any award of appellate attorney's fees until such issue is appropriate.

### *Joint and Several Liability*

There has been no contest to the contention that Defendants are joint-employers of Plaintiff and no contest that, as such, the Defendants are jointly liable. Accordingly, the Court finds that Defendants are jointly liable to Plaintiff for the damages incurred as a result of the illegal conduct.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Judgment be

14

GRANTED AS FOLLOWS:

The Verdict, as returned by the Jury, is incorporated fully herein by reference, and Plaintiff is awarded Final Judgment in the amount of $33,150 in compensatory damages plus $25,000 in punitive damages for a total amount of $58,150.00.

Plaintiff's Motion for Front Pay is DENIED.

Plaintiff's Motion for Prejudgment Interest on Back Pay is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney's Fees and Costs be GRANTED in part. Plaintiff is awarded $25,535 in fees; the issue of appellate fees is reserved.  Plaintiff is awarded $1,410.65 in costs.

IT IS FURTHER ORDERED that Plaintiff is awarded Post-Judgment Interest pursuant to 28 U.S.C. § 1961.

SIGNED this _____16th_____ day of March 2000.

JOHN HANNAH, JR.
United States District Judge

15